Jeremiah M. Hudson, ISB No. 8364
FISHER HUDSON SHALLAT
950 W. Bannock St., Ste. 630
Boise, ID 83702
Email: jeremiah@fisherhudson.com
Telephone: (208) 345-7000
Facsimile: (208) 514-1900

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL NEDDO,<br><br>       Plaintiff,<br><br>v.<br><br>PROJECT IMPACT STEM ACADEMY, an Idaho Political Subdivision; TERESA FLEMING, Individual; SUZANNE RONGE, Individual; BECKY WOOLLEY, Individual; BEN PETERSON, Individual; JAZMINE MARTIN, Individual; SHARINA JENSEN, Individual; KENNETH MALLEA, Individual.<br><br>       Defendant. | **Case No. 1:21-cv-00024**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff, DANIEL NEDDO, by and through his counsel of record, FISHER HUDSON SHALLAT, and claims and alleges against the Defendants, PROJECT IMPACT STEM ACADEMY, TERESA FLEMING, SUZANNE RONGE, BECKY WOOLLEY, BEN PETERSON, JAZMINE MARTIN, SHARINA JENSEN, and KENNETH MALLEA (collectively, "Defendants") as follows:

**COMPLAINT AND DEMAND FOR JURY TRIAL - 1**

## I.       INTRODUCTION

Plaintiff, Daniel Neddo ("Mr. Neddo") was a founding member of Project Impact STEM

Academy ("PiSA"), a new charter school in Kuna Idaho that opened in the fall of 2018.  In July of

2018, after considering several qualified applicants, Defendants hired Mr. Neddo as PiSA's

Director of Education, and signed him to a 3-year contract. Defendants' mismanagement of PiSA

in the first few months of Mr. Neddo's tenure created significant obstacles for the school, which

included, having to postpone the start of the first school year due to construction delays; beginning

the school year in an undersized, unairconditioned gymnasium; a one-week school closure in

September of 2018 due to additional construction delays and occupancy restrictions, among many

others.  These delays provided insurmountable hurdles for any Director of Education, requiring

the duplication of tasks already completed and assistance with tasks completely unrelated to those

assigned to the Director of Education.

To avoid taking responsibility for PiSA's failures, and after PiSA's Director of Operations

resigned citing Defendants' incompetence with regards to their oversight of the school, Defendants

decided to divert blame to Mr. Neddo.  On December 4, 2018, approximately five (5) months after

Mr. Neddo entered into his Administrator Contract with Defendants and three (3) months after the

start of PiSA's first school year, Defendants placed Mr. Neddo on administrative leave pending

termination.

After a two-day hearing, hearing officer Kenneth Mallea ("hearing officer") issued his

Findings of Fact, Conclusions of Law and Decision concluding that "Mr. Neddo materially

violated the essential terms of his Administrator Contract with PiSA, and that his discharge by the

Board is therefore warranted pursuant to applicable Idaho law and shall be effective immediately."

The hearing officer asserted that Mr. Neddo had committed every single violation that Defendants

had alleged, in direct contradiction to the evidence presented.  For example, regarding Defendants' allegation that Mr. Neddo had awarded "leadership premiums against the express wishes of the Board" to two PiSA teachers, the hearing officer decision (1) entirely disregarded the testimony of the administrator who testified that he had actually authorized and paid the two leadership premiums at the direction of one of the Defendants, and Mr. Neddo did not participate in any way because he was on administrative leave when the leadership premiums were paid, and (2) disregarded the testimony from the Defendants stating that they had only assumed Mr. Neddo had authorized the leadership premiums. Instead, the hearing officer concluded that "[t]he evidence shows that Mr. Neddo had knowledge of and had actively participated in the events which resulted in two teachers receiving Leadership Stipends totaling $15,000.00" without referencing any evidence showing how Mr. Neddo had allegedly "participated in the events," or how any alleged participation violated any of the terms of Mr. Neddo's contract.

The hearing officer's conclusion was so devoid of any factual basis that he concluded that Mr. Neddo violated PiSA policies that had specific deadlines imposed on the Director of Education that had not yet passed; that Mr. Neddo had failed to engage in tasks such as proposing PiSA curriculum to the Board when the meeting minutes of the PiSA Board clearly established that Mr. Neddo's proposed curriculum had been adopted by Defendants as PiSA's curriculum;  that PiSA policies permitting Mr. Neddo to approve certain activities, like PiSA Policy 4140 which states that "[v]isits to individual classrooms during instructional time shall be permitted only with the Director of Education's and teacher's approval," justified the hearing officer's conclusion that "Mr. Neddo disputed his responsibility to monitor visitors to the schools [...] This testimony was but one example of Mr. Neddo's penchant for blaming the Director of Operations for failures and

**COMPLAINT AND DEMAND FOR JURY TRIAL - 3**

his corresponding admission that he was not aware of all his job responsibilities as the Director of Education set forth in board policies"; among many, many others.

Defendants were determined to terminate Mr. Neddo, and they knew that they would have to violate Mr. Neddo's constitutional right to due process to do so.

## II.   PARTIES

1.      Mr. Neddo has been a resident of Kuna, Idaho at all times relevant hereto.

2.      Defendant Project Impact Stem Academy ("PiSA") is a political subdivision of the State of Idaho, and a charter school.

3.      Defendant Teresa Fleming is, and at all times relevant has been, a resident of Ada County, Idaho, and the Chairman of Defendant PISA's Board of Trustees ("Board").

4.      Defendant Suzanne Ronge is, and at all times relevant has been, a resident of Ada County, Idaho, and a member of the Board.

5.      Defendant Becky Woolley is, and at all times relevant has been, a resident of Ada County, Idaho, and a member of the Board.

6.      Defendant Ben Peterson is, and at all times relevant has been, a resident of Ada County, Idaho, and a member of the Board.

7.      Defendant Jazmine Martin is, and at all times relevant has been, a resident of Canyon County, Idaho, and a member of the Board.

8.      Defendant Sharina Jensen is, and at all times relevant has been, a resident of Ada County, Idaho, and a member of the Board.

9.      Defendant Kenneth Mallea is, and at all times relevant has been, a resident of Ada County, Idaho, and the hearing officer presiding over Plaintiff's Due Process Hearing.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 4**

### III.     JURISDICTION AND VENUE

10.     The jurisdiction of this Court is invoked and secured pursuant to 28 U.S.C. §1331, affording federal question jurisdiction, and 28 U.S.C. §1343, affording jurisdiction for violations of civil rights.

11.     This Court has pendent jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. §1367 because there is a common nucleus of operative facts as to his federal and state claims.

12.     Venue is proper in the District of Idaho in that all of the acts and omissions which form the basis of this Complaint occurred in Idaho; Mr. Neddo was a resident of Kuna, Ada County, Idaho at the time of the wrongs alleged herein commenced; PiSA is a governmental subdivision of the State of Idaho; and all other Defendants are residents of Ada County, Idaho or Canyon County, Idaho.

### IV.     GENERAL ALLEGATIONS

13.     At all times relevant to this complaint, PiSA is a charter school in Kuna, Idaho, that was created to provide a STEM education for students between Kindergarten and 9th grade. PiSA opened its doors to students in September of 2018.

14.     Between August 2015 and May 2018, Mr. Neddo was a teacher and performing the functions of administrator for the STEM Academy at Columbia High School in Nampa, Idaho.

15.     On September 5, 2017, Mr. Neddo, along with Defendant Fleming, Defendant Ronge, Defendant Peterson, Defendant Jensen, and Defendant Woolley, among others, conducted PiSA's first Board meeting.

16.     On or about March 8, 2017, Angela Hemingway, the Executive Director of the Idaho STEM Action Center from the Office of the Governor, sent the PiSA Selection Committee

**COMPLAINT AND DEMAND FOR JURY TRIAL - 5**

a Letter of Recommendation for Mr. Neddo.  Among other things, Angela Hemingway's letter of

recommendation stated:

> Currently, [Mr. Neddo] is the STEM Academy Administrator and educator at Columbia High School in the Nampa School District. Dan was integral in setting up and implementing the STEM Academy which is in its third year in the Nampa School District… He writes grants and creates innovative curriculum to ensure that his students have opportunities that transcend the walls of his classroom, giving students the 21st century skills that are necessary for the workforce such as critical and creative thinking, collaboration, teamwork, and problem-solving.  Recently, Dan transitioned to overseeing eight teachers as they worked on various project-based learning units.

17.     On or about January 2, 2018, Mr. Neddo resigned his position on the PiSA Board

and his employment at Columbia High School, and applied for the part-time consulting position

with PiSA, and sent his resume to the PiSA Selection Committee.

18.     In Mr. Neddo's two-page resume that he sent to PiSA, Mr. Neddo set forth his

Education, Certifications, Professional Experience, Association Membership, Other Professional

Experiences, Awards, and References.  A true and correct copy of Mr. Neddo's resume, submitted

to PiSA, is attached hereto as **Exhibit A**.

19.     Under the "Certifications" section of Mr. Neddo's Resume, Mr. Neddo asserted the

following:

**CERTIFICATIONS**

| | |
|---|---|
| 2018 | Idaho Education Credential |
| | **Standard Administrator School Principal Pre-K-12** |
| 2018 | Idaho Education Credential |
| | **Standard Secondary Natural Science 6-12** |
| 2010 | American Board for Certification of Teacher Excellence **General Science** |

20.     Mr. Neddo did not assert that he had any additional certifications as an

administrator in the Resume he submitted to PiSA.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 6**

21.    Under the "Professional Experience" section of Mr. Neddo's Resume, Mr. Neddo asserted as follows:

**PROFESSIONAL EXPERIENCE**

March 2014-Current
Columbia High School, Nampa Idaho
**Columbia STEM Academy Administrator**
- Develop and oversee STEM program as a school within a school while directing curriculum, instructional strategies and lesson planning for competency based activities creating an environment conducive to learning.
- Oversee five STEM Teachers and 141 STEM students coordinating Project Based Learning (PBL) lessons and projects.
- Promote professional development experiences for faculty to further STEM Academy's vision of education.
- Develop partnerships with industry, community and higher education leaders to bring real-world problems for the STEM students to work on.
- Direct daily STEM Academy operations including staff member coverage, student scheduling and community involvement.

August 2010-Current
Columbia High School, Nampa, Idaho
**Teacher, Physics, STEM, Physical Science and Pre-Engineering**
- Teach chemistry, physics and Pre-Engineering courses
- Developed Conceptual Physics program not previously offered at school
- Science Department Team Leader
- Interdisciplinary and Response to Intervention Team Leader

August 2013-2015
Columbia High School, Nampa, Idaho
**Dean of Students, Ninth Grade**
- Oversee attendance and discipline of students
- Advocate for students appealing for credit recovery from School Board
- Administrator representative for Special Education meetings
- Developed and administered school benchmark assessments

22.    At the January 23, 2018 PiSA Board Meeting, Mr. Neddo discussed the need for the PiSA Board to create a curriculum adoption committee to help develop PiSA's curriculum.

23.    On or about January 27, 2018, Defendant Fleming, as an authorized representative of PiSA, sent Mr. Neddo an employment offer as a consultant starting on February 15, 2018 and ending on June 30, 2018.  Mr. Neddo accepted.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 7**

24.     In <u>February of 2018</u>, PiSA hired Justin Mann as PiSA's Director of Operations.

25.     In the <u>February 20, 2018</u> PiSA Board Meeting, the meeting minutes state the following:

> Director Neddo would like to have hired teachers involved in selecting curriculum. Some prospective teachers have written Mr. Neddo and have concerns about Summit having built in curriculum. Director Fleming has had parents concerned that kids will be sitting in front of technology all day. Director Peterson offered that parents simply want to know what the students' day will look like? What is the schedule like? What's the focus?

26.     On or about <u>March 27, 2018</u>, the PiSA board unanimously approved the use of Summit Learning Program for curriculum for 4th through 9th grade, which Mr. Neddo had submitted to the Board. The Summit Learning Platform is an online tool with a built-in curriculum that meets the Idaho Standardized Learning curriculum.  It allows each teacher to adapt and make changes to fit the needs of their students.  The curriculum covered grades 4-12.

27.     At the <u>April 24, 2018</u>, PiSA Board Meeting, Mr. Neddo informed Defendants that "Julie Hall has been hired as SPED director and she will be involved as soon as possible." The term "SPED director" is the abbreviated form of Special Education Director.  The Special Education Director at PiSA was assigned to train, oversee, and manage PiSA's paraeducators and paraprofessionals.

28.     At the <u>May 22, 2018</u>, PiSA Board Meeting, the meeting minutes show that Mr. Neddo informed Defendants of the following:

a.  "A curriculum adoption committee is needed, per State statute. Summit Learning Platform is the base curriculum for grades 4-12, but something is needed K-3. Teachers will be part of the committee, as well as community members who possess skills helpful to such a committee. An invitation to join the committee will go out on social media."

**COMPLAINT AND DEMAND FOR JURY TRIAL - 8**

b. "Mr. Neddo met with Kelly Brady from IMEN to discuss what curriculum means in a digital world. The state currently has competencies chosen for our students to learn. Competencies need to be mapped out and grade levels will be done away with.  Rather, a badging system will be implemented. Director Ronge questioned what this 'badging' would look like on a transcript in case of students relocating to a different school and for college/scholarships. A system will be put in place to transfer the badges to letter grades in these cases. Our SIS system, ALMA, may have the capability to do this."

c. "Summit training will take place from July 16th-20th."

29.     The "Summit training" Mr. Neddo referenced in the May 22, 2018 Board Meeting minutes was for PiSA's teachers to learn details of the Summit Learning Platform.

30.     By the end of May 2018, Mr. Neddo had recruited and hired twelve teachers and two staff members for PiSA.  With the twelve teachers, the hiring for all of PiSA's teaching positions had been filled.

31.     On or about July 1, 2018, Mr. Neddo was hired by the Board to be PiSA's full-time "Director of Education" pursuant to the state-approved administrator contract ("Administrator Contract") between PiSA and Mr. Neddo.  PiSA chose Mr. Neddo as PiSA's full-time Director of Education over other candidates that had applied for the position, including Dr. Jill Hettinger.

32.     Mr. Neddo's Administrator Contract with PiSA was entered into and commenced on July 1, 2018 and continued through June 30, 2021, paying Mr. Neddo a "base salary of Seventy-five thousand dollars ($75,000.00) per year, plus any additional annual increments, and such other monetary benefits accorded by the School to employees under contract for this position which may

be described in a separate addendum." A true and correct copy of Mr. Neddo's Administrator

Contract is attached hereto as **Exhibit B**.

33.     Mr. Neddo's Administrator Contract also stated:

> In consideration of the promises and agreement of the school
> hereinbefore recited, the Administrator agrees to assume the duties
> above recited at 2275 W. Hubbard Road, Kuna, Idaho on July 1, in
> the year 2018, and to faithfully perform and discharge the same to
> the best of his/her ability as directed by the School and to comply
> with the applicable laws of the State of Idaho and duly adopted rules
> of the State Board of Education, and such regulations, directives and
> policies as the Board of Directors may legally prescribe which are,
> by reference, incorporated in and made a part of this agreement the
> same as if set forth herein.

34.     From July 1, 2018, when Mr. Neddo was hired as the full-time Director of

Education, PiSA experienced several obstacles to opening the school, which was originally

scheduled to open on or around August 22, 2018. Among other things, Mr. Neddo was required

to spend a substantial amount of time performing tasks that were not encompassed in the tasks

assigned to the Director of Education. Among other tasks, Mr. Neddo was required to haul PiSA's

garbage to the landfill in Mr. Neddo's horse trailer; haul PiSA's furniture to Mr. Neddo's home

for storage; and assemble furniture for PiSA.

35.     In the July 3, 2018, PiSA Board Meeting, the meeting minutes state that Mr. Neddo

discussed the following with Defendants:

> a.   "Mr. Neddo completed accreditation training and teacher evaluation training.
>
>      Summit Training for staff is July 16-20th. New superintendent training for Mr.
>
>      Neddo is July 31st."
>
> b.   "Curriculum-Committee needs to be created. Need to reach out to
>
>      parents/community members. A committee meeting needs to be held ASAP.
>
>      Main focus is K-3 curriculum."

**COMPLAINT AND DEMAND FOR JURY TRIAL - 10**

  c. "Paraprofessionals to be hired and begin once school starts."

  d. "How can teachers be compensated for work that needs to be done prior to contract start date? Stipends? How does it affect benefits?"

36. At the July 3, 2018, PiSA Board Meeting, PiSA's Director of Operations, Mr. Mann, informed the board that PiSA "Need[s] a camera so office staff can see visitors coming."

37. At the July 31, 2018, PiSA Board Meeting, the PiSA board unanimously approved delaying the start of the school year to September 4, 2018 because construction of PiSA's facility would not be completed in time. Mr. Neddo was assigned to adjust the school calendar to meet the State of Idaho's minimum requirements.

38. In early August 2018, Mr. Neddo implemented the Danielson Evaluation Program, which was to be used for teacher evaluations at PiSA.

39. On August 13, 2018, the teaching contracts for PiSA's teachers went into effect, and PiSA's teachers began work for compensation.

40. Between August 13, 2018 and August 20, 2018, Mr. Neddo conducted daily meetings with PiSA teachers for professional development and to develop and refine PiSA's curriculum. Due to the incomplete PiSA facility, these meetings took place at Northwest Nazarene University, Flying M Coffee House, Pioneer Title, Ridley's Market, and Mr. Neddo's home.  Mr. Neddo spent approximately eight (8) hours per day at these meetings.

41. At the August 20, 2018, PiSA Board Meeting, the meeting minutes state: "Construction is not on schedule. Mr. Neddo and Mr. Mann to look into temporary facility usage until occupancy is granted."

42. At the August 20, 2018, PiSA Board Meeting, Defendants unanimously passed Mr. Neddo's proposed curriculum for Kindergarten through 3rd grade.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 11**

43.     On September 4, 2018, despite delays in the construction of the facilities, PiSA opened its doors, and students began their first day of school at PiSA.

44.     The temporary location where students attended PiSA was an unairconditioned gymnasium located on 4th street in Kuna, Idaho. Mr. Neddo and Mr. Mann were required to set up cloth partitions to separate the different grades. PiSA's Kindergarteners were placed in the small work room in the basement. PiSA's First through Third graders were in the front of the gym. PiSA's Fourth through Sixth graders were in the middle of the gym.  PiSA's Seventh through Ninth graders were in the back of the gym. In total, there were approximately 300 students at PiSA's temporary location. Two teachers received medical attention due to the heat in the unairconditioned gym.

45.     At the September 13, 2018, PiSA Board Meeting, the PiSA Board addressed the construction delays of PiSA facilities.  The meeting minutes state that "Mr. Neddo explained his concerns regarding safety, staffing and general frustrations in the current environment" and Mr. Neddo proposed that PiSA "close the school next week and resume on 9/24 at the site. IRI and MAP testing could then occur during that first week at the site."

46.     IRI, as set forth above, stands for Idaho's Reading Indicator, and is administered to all K-3 public school students as an early reading screener and diagnostic assessment. The IRI is a computer-based test. MAP testing is a computer based adaptive test that determines students' growth in various subject areas.

47.     At the September 13, 2018, PiSA Board Meeting, in addition to addressing the additional tasks relating to the "safety, staffing and general frustrations in the current environment", Defendants assigned Mr. Neddo with creating an "administrative committee with parents to develop an adjusted calendar. This calendar will be presented to the Board at our regular

**COMPLAINT AND DEMAND FOR JURY TRIAL - 12**

meeting on October 2nd." Additionally, Defendants directed that "Mr. Mann and Mr. Neddo will be working with the PPP to help mitigate parental concerns. And will seek ways to maintain engagement over the week-long break."

48.    On <u>September 27, 2018</u>, Mr. Neddo attended ISEE training from the Idaho State Department of Education.

49.    On <u>October 4, 2018</u> and <u>October 5, 2018</u>, Mr. Neddo attended the New Principal Mentor training conducted by the Idaho Department of Education.

50.    On <u>October 11, 2018</u>, and <u>October 12, 2018</u>, Mr. Neddo attended an Idaho Mastery Education Network training, which included training for the K-3 competencies and proficiency scales.

51.    In the <u>October 12, 2018</u>, PiSA Board Meeting, Defendants entered an executive session wherein they placed Mr. Neddo on administrative leave pending a due process hearing for an inadvertent lapse in Mr. Neddo's administrator credentials.

52.    On or about <u>October 12, 2018</u> through <u>October 23, 2018</u>, Defendants placed Mr. Neddo on administrative leave due to the inadvertent lapse in his administrator credentials. Defendants threatened Mr. Neddo with termination if he did not have current administrative credentials within ten (10) business days. While Mr. Neddo was on administrative leave, Defendants named Jill Hettinger as the Interim Director of Education.

53.    Between <u>October 12, 2018</u> and <u>October 23, 2018</u>, Interim Director of Education, Jill Hettinger, instructed Director of Operations, Justin Mann, to process Leadership Premium stipends for two teachers, totaling $15,000. Mr. Mann signed and distributed the Leadership Premium stipend checks to their recipients.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 13**

54.     On or around October 15, 2018, while Mr. Neddo was on administrative leave, PiSA's ISEE report was due to the Idaho State Department of Education.  Jill Hettinger did not submit PiSA's ISEE report while Mr. Neddo was on administrative leave.

55.     On or around October 16, 2018, Mr. Neddo's administrative credentials were reinstated by the Idaho State Department of Education.

56.     On or around October 23, 2018, Mr. Neddo was removed from administrative leave approximately six days after the reinstatement of his administrator credentials.

57.     On or around October 24, 2018, Mr. Neddo conducted a training for PiSA's Paraeducators.

58.     On October 28, 2018 through October 30, 2018, Mr. Neddo attended a Summit Learning training with three PiSA staff members in Phoenix, Arizona.

59.     On November 2, 2018, Mr. Neddo completed and submitted PiSA's ISEE Report to the Idaho State Department of Education that Jill Hettinger had failed to submit while Mr. Neddo was on administrative leave.

60.     At a PiSA board meeting on November 6, 2018, two months after PiSA had first opened its doors to students, Mr. Neddo explained the status of the following, as set forth in the meeting minutes:

    a.  "IRI testing is completed, reports to be distributed. MAP testing in math is completed 4-9. K-3 is in process."

    b.  "Moby Max testing in K-3 math is completed. Data is being collected. MAP testing will help clarify needs. Director Woolley asked if the children are practicing using the computers and program prior to testing, for more accurate

**COMPLAINT AND DEMAND FOR JURY TRIAL - 14**

results. Mr. Neddo answered that the tests are administered simply for data, but
that teachers give the best data."

c.  "Background checks are slow. Changes have been made in the price.  30-40
have been filled out, only 7 have gone through. Policy 4600P says we can pay
for the volunteer checks. The school can have an escrow at the SDE for these.
Then the school takes the fingerprints in."

d.  "Mr. Neddo said the substitute pool was going to be created from the volunteer
pool. He has reached out to the charter school network before but didn't have
response. Dr Hettinger got a response. They vote in November who can be a
part of their sub pool. They have already budgeted for the year.  The cost is per
year and would need to renew each year. There are 2 separate costs."

61.     At the <u>November 6, 2018</u>, PiSA Board Meeting, Director of Operations, Justin
Mann, whose job description put him in charge of "all compliance responsibilities including Titles
I-V, teacher certification, fingerprinting, safety, fire drills, health, technology, COBRA letters,
student lottery, annual Sexual Harassment seminar, and any legal issues," stated "that the SDE
defines those volunteers needing to have background checks as those who will be unsupervised.
The administrators would rather not have a volunteer than risk it. They are erring on the side of
caution than create a potential situation. Policy 4600P also states that volunteers need to have a
background check."

62.     At the <u>November 8, 2018</u>, PiSA Board Meeting, Public Charter School
Commission ("PCSC") members Jenn Thompson and Tamara Baysinger attended and explained
multiple complaints from different stakeholder groups, including parents, community members,
and staff as they relate to three different areas: Academic, Financial, and Operations.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 15**

63.     PCSC's assessment of PiSA's Academics stated that the "Board should know the 'numbers.'"  PCSC did not express any additional concerns with PiSA's academics.

64.     PCSC's assessment of PiSA's Finances was that they "likely needs review based on current enrollment values."   PCSC did not express any additional concerns with PiSA's financials.

65.     PCSC's assessment of PiSA's Operations were as follows:

    a.  "ensure all stakeholders understand and can use the grievance procedures"

    b.  "ISEE reporting issues"

    c.  "Phone issues"

    d.  "Visitor/volunteer processes – maybe include badging methods to denote checked in guests"

    e.  "Ensure stakeholders understand spending"

    f.  "Find methods to incorporate safety training to staff"

    g.  "Improvements to working conditions for all staff"

    h.  "Improvements to facility structure"

66.     On or about November 25, 2018, Mr. Neddo began the teacher evaluation process by meeting with individual teachers.  In doing so, Mr. Neddo sent an email to certificated staff, including Paraprofessionals, Teachers' Aides, and Paraeducators, explaining the process by which Mr. Neddo would be conducting evaluations.

67.     At the December 4, 2018, PiSA Board Meeting, Defendants placed Mr. Neddo on administrative leave pending termination.

68.     On or around December 4, 2018, Defendants named Jill Hettinger as Director of Education. Prior to being named as Director of Education, Jill Hettinger had never been employed in a role as a certified administrator.

69.     On or about December 27, 2018, Defendants issued Mr. Neddo a Notice of Due Process Hearing ("Notice"). Defendants' allegations against Mr. Neddo are set forth in detail below.

70.     Defendants paid Mr. Neddo his salary through January 31, 2019, and thereafter failed to make any additional payments pursuant to Mr. Neddo's Administrator Contract.

71.     Between July 1, 2018 and December 4, 2018, there were 106 business days. Considering the six days Mr. Neddo was on administrative leave, Mr. Neddo was PiSA's full-time Director of Education for 100 business days.

72.     Between the first day PiSA opened its doors to students on September 4, 2018 and December 4, 2018, there were 57 school days at PiSA. Considering Mr. Neddo's six days of administrative leave, Mr. Neddo was PiSA's full-time Director of Education for 51 school days.

73.     On or around February 6, 2019 and February 7, 2019, Defendants conducted a hearing on the allegations set forth in the December 27, 2018 Notice of Due Process Hearing letter.

74.     On March 22, 2019, the hearing officer issued his Findings of Fact, Conclusions of Law and Decision ("Decision") finding that "Mr. Neddo materially violated the essential terms of his Administrator Contract with PiSA, and that his discharge by the Board is therefore warranted pursuant to applicable Idaho law and shall be effective immediately."

75.     As set forth in detail below, and based on information and belief, the hearing officer determined that Mr. Neddo would be terminated prior to Mr. Neddo's termination hearing, and without consideration of any of Mr. Neddo's evidence.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 17**

76.     On <u>March 22, 2019</u>, Defendants sent a letter to Mr. Neddo informing him that his contracted employment with PiSA was terminated as of March 22, 2019 based upon the findings of the Hearing Officer.

**NOTICE OF DUE PROCESS ALLEGATIONS AND DECISION**

**Principle IV.b of the Professional Code of Ethics**

77.     The Notice of Due Process Hearing alleged that Mr. Neddo violated the Professional Code of Ethics as follows:

> Because of your inability to adequately perform the majority of the requisite job responsibilities, coupled with your inability to model the traits needed to demonstrate you possess a majority of the requisite qualifications to serve as PiSA's Education Director, it appears that, at the time of your hiring, you falsely represented to the Board that you were qualified to perform the requisite functions, and as a result violated Principle IV. b of the Code of Ethics, as well as your administrator contract.

78.     In the Decision, the hearing officer summarily concluded that Mr. Neddo violated Principle IV.b of the Professional Code of Ethics by finding:

> Regarding Mr. Neddo·s resume given to STEM prior to his employment (Exhibit B) **[Columbia High School] Principal [Cory] Woolstenhulme testified that although Mr. Neddo was the STEM Academy lead, he was not technically an administrator within the Nampa School District, but that the duties Mr. Neddo described on Exhibit B were accurate insofar as his duties at Columbia High School.** Mr. Neddo had no administrator role in the Nampa School district, he was always employed on a standard teacher's contract, he had no reporting duties vis a vis the State Department of Education, he had no purchasing duties, and he had never been involved in the hiring or evaluation of other teachers or staff at Columbia High School. (emphasis added).

79.     The hearing officer further held:

> The distinction between an administrator and a teacher is well known among certificated professionals in the state of Idaho. Despite being the STEM lead at CHS, Mr. Neddo was always a

teacher in that. **Had the board known Mr. Neddo's true qualifications it is reasonable to conclude he would not have been hired.** Thus his overstating of his own experience in part caused the board to offer him an employment contract as the Director of Education. It is therefore concluded that Mr. Neddo misrepresented his qualifications and experience to the Founding Board and thereby violated Principle IV(a) of the Code of Ethics, and thereby materially breached his employment contract. (emphasis added).

80.     The hearing officer failed to explain his conclusion that Mr. Neddo did not have duties as an administrator at Columbia High School when the hearing officer's summary of testimony of Columbia High School Principal Woostenhulme included the following:

   a.   "[T]hat the duties Mr. Neddo described on [his resume] were accurate insofar as his duties at Columbia High School."

   b.   "Mr. Neddo became the Columbia High School STEM program lead which led to collaboration with other teachers within Columbia and ultimately became known as the Columbia High School STEM Academy."

   c.   "Mr. Neddo served in the capacity of Dean of Students for one class of students (9th grade) and had some limited duties of administration for summer programs."

81.     The hearing officer failed to explain his conclusion that Mr. Neddo "had never been involved in the hiring or evaluation of other teachers or staff at Columbia High School" despite the hearing officer's summary of Columbia High School Principal Woostenhulme's testimony that "Mr. Neddo did participate by way of recommendations with respect to hiring of other teachers and that Mr. Neddo 'had his fingers in just about everything' related to the STEM Academy within Columbia High School."

**COMPLAINT AND DEMAND FOR JURY TRIAL - 19**

82.     The hearing officer failed to consider the undisputed evidence that Mr. Neddo's resume did not assert that Mr. Neddo had an Administrator's Certification prior to 2018.

83.     The hearing officer failed to explain how he concluded that "[h]ad the board known Mr. Neddo's true qualifications it is reasonable to conclude he would not have been hired" when Mr. Neddo's Resume did not state that he was a certified administrator prior to 2018.

84.     The hearing officer failed to explain how he concluded that "[h]ad the board known Mr. Neddo's true qualifications it is reasonable to conclude he would not have been hired" when Jill Hettinger had no experience as a certified administrator when she succeeded Mr. Neddo as Director of Education on or around December 4, 2018.

**PiSA Policy No. 5480. Leadership Premiums.**

85.     The Notice of Due Process Hearing alleged that Mr. Neddo violated the following PiSA Policy:

> **PiSA Policy No. 5480. Leadership Premiums.** Policy 5480 vests the Board with the *exclusive* authority to set and award leadership premiums to staff who serve in a leadership capacity at PiSA. As discussed above, your awarding of leadership premiums against the express wishes of the Board, was not only insubordinate, but also defied the express requirements of this policy and such violation also breached the terms of your administrator contract.

86.     At the hearing, Director of Operations Justin Mann testified that he processed and paid the two leadership premiums at the direction of Interim Director of Education Jill Hettinger while Mr. Neddo was on administrative leave between October 12, 2018 and October 23, 2018.

87.     No evidence was submitted to the hearing officer that indicated Mr. Neddo processed or paid the Leadership Premiums.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 20**

88.     At the hearing, Defendant Fleming was asked, "So how is it that Mr. Neddo could have approved [the leadership premiums] if he wasn't even there?"  Defendant Fleming responded, "If he told Justin [Mann] to send them in, I don't know."

89.     In the hearing, Defendant Fleming was asked "Why do you assume that Mr. Neddo improperly authorized these funds?"  Defendant Fleming responded by saying "because Mr. Neddo wanted them authorized, I assume he told Justin [Mann] to send them in.  I don't know why."

90.     When Mr. Mann was asked at the hearing whether he was "aware of any time that Dan [Neddo] directed the payment of the funds for the leadership premiums?" Mr. Mann responded "No."

91.     When Mr. Mann was asked to "tell the hearing officer how this came about, how did the funds get approved," Mr. Mann testified: "That was while Mr. Neddo was out on administrative leave, um, in October, and Dr. Hettinger was in as Interim Director of Education. Um, we had a meeting in [Dr. Hettinger's] office with her, myself, and Julie Hall […] and we were trying to find the status of that. It's my memory that Dr. Hettinger called Director Fleming from the board to ask the status of that. Um, after that conversation, Dr. Hettinger told me that Director Fleming told her that the contracts had been approved and that we were good to go ahead with them. So, based on that direction I received, I had them sign the leadership stipend contracts and entered it into the red apple financial system."

92.     When asked if Mr. Neddo had "anything to do" with the payment of the Leadership Stipends, Mr. Mann testified "No, he was out on administrative leave."

**COMPLAINT AND DEMAND FOR JURY TRIAL - 21**

93.     When Mr. Mann was presented a copy of the leadership stipend award PISA EX 277) and asked who signed the leadership stipend, Mr. Mann testified: "Julie Hall and then myself" on "October 16th 2016."

94.     In the Decision, the Hearing Officer summarily concluded as follows:

> The evidence shows that Mr. Neddo had knowledge of and had actively participated in the events which resulted in two teachers receiving Leadership Stipends totaling $15,000.00, which resulted in both receiving monthly payments from Red Apple despite the undisputed evidence that as of December 4, 2018. the board had not approved the contracts - which fact was admitted by Mr. Neddo. (PISA EX 225.) This failure to obtain board approval violated the Code of Ethics, and Board Policy and thereby materially breached his employment contract.

95.     The hearing officer failed to identify any evidence supporting his conclusion that Mr. Neddo "had knowledge of and had actively participated in the events which resulted in two teachers receiving Leadership Stipends totaling $15,000.00."

96.     The hearing officer failed to define "actively participated" as it related to Mr. Neddo's alleged role in the Leadership Premiums.

97.     The hearing officer failed to explain how "actively participat[ing]" in the Leadership Premiums violated PiSA policy, PiSA directives, PiSA's job description for Director of Education, or Mr. Neddo's Administrator Contract.

**PiSA Policy No. 2100. Curriculum Development and Assessment.**

98.     The Notice of Due Process Hearing alleged that Mr. Neddo violated the following PiSA Policy:

> **PiSA Policy No. 2100. Curriculum Development and Assessment.** As Educational Director, you are, inter alia, '[R]esponsible for making curriculum recommendations. The curriculum shall be designed to accomplish the learning objectives and goals for excellence consistent with the Charter School's educational philosophy, mission statement, objectives, and goals.'

**COMPLAINT AND DEMAND FOR JURY TRIAL - 22**

The Idaho Public Charter School Commission ("PCSC") found that teachers were building their own curriculum, typically in the evenings and on a day-by-day basis, and warned that the lack of a cohesive, planned curriculum increased the likelihood students would not benefit from adequate academic preparedness. When asked by the Board to explain your plan, you essentially admitted in your correspondence dated December 1, 2018, that your plan was never intended to implement a curriculum to be followed on a day-to-day basis, and was being developed as the year progressed. This is unacceptable curriculum planning and violates Policy 2100.

99.     PiSA Policy No. 2100, in relevant part, states: "The Board of Directors is responsible for curriculum adoption and must approve all significant changes, including the adoption of new textbooks and new courses, before such changes are made. The Executive Director is responsible for making curriculum recommendations. The curriculum shall be designed to accomplish the learning objectives and goals for excellence consistent with the Charter School's educational philosophy, mission statement, objectives, and goals."

100.    In the Decision, the hearing officer concluded:

Mr. Neddo, Nonetheless, disagreed with the board's concerns about the state of the curriculum and the suspension of students and staff and maintained –'all was well.' But all was not well. Dr. Hettinger testified that there was no coherent curriculum in place; instead there were bits and pieces that had been initiated by Mr. Neddo, but the curriculum was far from complete. Dr. Hettinger further testified that a proper STEM curriculum would need to effectively dovetail the programs from year to year to ensure the required student growth under the STEM program while also complying with the requirements of Idaho's core requirements. Mr. Neddo had, on various occasions, informed staff that these requirements did not apply to PiSA because it was a charter school. Which Dr. Hettinger explained was clearly erroneous. She clarified the problems inherent in Mr. Neddo's dismissal of the PCSCs concerns about curriculum development. His belief that the summit curriculum was adequate was clearly misplaced. Summit is a tool only and reflects only national standards and must be supplemented with state standards and other services to meet the STEM school requirements. Dr. Hettinger was extremely critical of most of Mr. Neddo's performance, and she has the requisite expertise and experience to entitle her opinions to great weight Her testimony and documentary

evidence are overwhelmingly supportive of a finding that Mr. Neddo's job performance was unsatisfactory.

101.     The hearing officer failed to identify which PiSA policy, PiSA directives, PiSA's job description for Director of Education, or Mr. Neddo's Administrator Contract that Mr. Neddo allegedly violated.

102.     The hearing officer failed to explain why Mr. Neddo's proposed curriculum for 4th through 9th grade, that was unanimously approved by Defendants at the March 27, 2018 PiSA Board Meeting, and Mr. Neddo's proposed curriculum that was unanimously approved by Defendants at the August 20, 2018 PiSA Board Meeting, did not satisfy Mr. Neddo's obligations under PiSA Policy 2100 "for making curriculum recommendations."

103.     The hearing officer failed to consider that Mr. Neddo was PiSA's Director of Education for a total of 51 school days, and that Mr. Neddo's Administrator Contract contemplated that Mr. Neddo would be assessing and proposing changes to the PiSA curriculum beyond the first 51 school days that Mr. Neddo was the Director of Education.

**PiSA Policy No. 2620. Grading and Progress Reports.**

104.     The Notice of Due Process Hearing alleged that Mr. Neddo violated the following PiSA Policy:

> **PiSA Policy No. 2620. Grading and Progress Reports.** As Education Director the Board has directed you 'to establish a system of reporting student progress and shall require all staff members to comply with such a system as part of their teaching responsibility.' You have not established such a system, and as a result, have violated this policy and breached your employment contract.

105.     In the Decision, the hearing officer summarily concluded: "Policy 2620 tasks the Director of Education with establishing a system of reporting student progress requiring all staff members to comply with the system as part of their teaching responsibilities. Similar to the failure

**COMPLAINT AND DEMAND FOR JURY TRIAL - 24**

to create curriculum and to assess student achievement Mr. Neddo failed to establish a system of reporting student progress as testified to by Dr. Hettinger."

106.    The hearing officer failed to explain why Mr. Neddo's proposed use and implementation of the Marzano proficiency scales and IMAN competencies for grading and progress for Kindergarten through 3rd Grade, that the PiSA Board unanimously approved in the April 10, 2018 PiSA Board Meeting, failed to satisfy Mr. Neddo's obligations under PiSA Policy 2620.

107.    The hearing officer failed to explain how Mr. Neddo's proposed use and development of the state-purposed badging system for grading and progress for all students at the May 22, 2018 PiSA Board Meeting, did not satisfy Mr. Neddo's obligations under PiSA Policy 2620.

108.    The hearing officer's Decision failed to cite any evidence supporting Defendants' contention that Mr. Neddo failed to "establish a system of reporting student progress and shall require all staff members to comply with such a system as part of their teaching responsibility," in violation of PiSA Policy No 2620.

### PiSA Policy No. 2800. Education Objectives.

109.    The Notice of Due Process Hearing alleged that Mr. Neddo violated the following PiSA Policy:

> **PiSA Policy No. 2800. Education Objectives.** Similar to Policy 2100, you are required to develop an instructional program that satisfies several criteria:" "1.  Placement of a student at the student's functional level;" "2.  Learning materials and methods of instruction considered to be most appropriate to the student's learning style; and" "3.  Evaluation to determine if the desired student outcomes have been achieved."   "You have neglected to develop and implement a cohesive instructional program designed to provide for the sequential intellectual and skill development necessary for

**COMPLAINT AND DEMAND FOR JURY TRIAL - 25**

students to progress on a continuous basis from the elementary through secondary school, and violated this policy as a result.

110.    In the Decision, the hearing officer concluded:

> Policy 2800 requires the DOE to develop instructional programs that enable each student to learn at the student's best rate. The DOE is also required to evaluate and document the degree to which the instructional programs are developed and implemented. As testified to by Dr. Hettinger and Board Chair Fleming. Mr. Neddo failed to accomplish these tasks; indeed, he failed to schedule the IRI Training, which was necessary to determine the initial placement of students, and as a result of the lack of initial assessments, the school will be unable to provide accurate reports to the State Department of Education.

111.    The hearing officer failed to explain how Mr. Neddo's establishment of the Marzano proficiency scales for the purpose of determining learning progressions of Kindergarten through 3rd Graders, which the PiSA Board unanimously approved at the April 10, 2018, PiSA Board Meeting, failed to satisfy Mr. Neddo's obligations under PiSA Policy 2620.

112.    The hearing officer failed to explain how Mr. Neddo's proposed use of the state-purposed badging system, which tracked progress for all students, at the May 22, 2018, PiSA Board Meeting, did not satisfy Mr. Neddo's obligations under PiSA Policy 2620.

113.    The hearing officer failed to consider whether it was possible for Mr. Neddo to schedule IRI Training, "which was necessary to determine the **initial placement** of students," (emphasis added) given that the IRI training was not required or expected to be completed prior to the beginning of the school year when students' initial placement occurred.

114.    The hearing officer failed to explain how he concluded that Mr. Neddo "failed to schedule the IRI Training," when Mr. Neddo reported to Defendants at the November 6, 2018, PiSA Board Meeting that "IRI testing is completed."

**COMPLAINT AND DEMAND FOR JURY TRIAL - 26**

115.    The hearing officer failed to explain how Mr. Neddo's Administrator Contract required him to "evaluate and document the degree to which the instructional programs are developed and implemented" within the first 51 school days that Mr. Neddo was Director of Education.

### PiSA Policy No. 4140. Visitors to the School.

116.    The Notice of Due Process Hearing alleged that Mr. Neddo violated the following PiSA Policy:

> **PiSA Policy No. 4140. Visitors to the School.** This policy requires reporting procedures for visitors and the notices to be posted to ensure compliance by all visitors. The PCSC found that, despite the 'excellent' recommendations made by the Director of Operations, you chose to not implement these procedures and therefore violated both this policy and your employment contract.

117.    PiSA Policy No. 4140 does not assign responsibility for Visitors to the School to the Director of Education, except for that "[v]isits to individual classrooms during instructional time shall be permitted only with the Director of Education's and teacher's approval."

118.    PiSA's job description for the Director of Education did not assign responsibility for visitors at PiSA.

119.    In the Decision, the hearing officer concluded:

> Board Policy is clear that visitors to classrooms during instructional time are permitted only with the DOE's and teacher's approval. Despite this requirement, Mr. Neddo disputed his responsibility to monitor visitors to the schools, instead, stating it was the responsibility of Justin Mann in his role as the Director of Operations. This testimony was but one example of Mr. Neddo's penchant for blaming the Director of Operations for failures and his corresponding admission that he was not aware of all his job responsibilities as the Director of Education set forth in board policies. This lack of awareness in and of itself demonstrates a breach of his duties. Mr. Neddo's only excuse for not being aware of all applicable duties under board policies was his claim that the policies had been implemented since school began and that there

were a lot of them so he could not be expected to know all of them. By this testimony, Mr. Neddo demonstrated a complete lack of awareness and appreciation for the magnitude of his job responsibilities, and how important the accomplishment of these functions was to the successful education of PiSA's students.

120.    The hearing officer failed to explain why he concluded that PiSA Policy No. 4140, which requires that classroom visitors get approval from the Director of Education and the appropriate teacher, created any affirmative duty for Mr. Neddo to monitor PiSA's visitors.

121.    The hearing officer failed to explain why at the November 8, 2018, PiSA Board Meeting, PCSC's assessment identified "Visitors/volunteer processes" as a concern with PiSA's Operations, which was under the purview of PiSA's Director of Operations.

### PiSA Policy No. 4160.  Parents Right-to-Know Notices.

122.    The Notice of Due Process Hearing alleged that Mr. Neddo violated the following PiSA Policy:

> **PiSA Policy No. 4160.  Parents Right-to-Know Notices.**  You failed to send or have sent to all parents the several notices to parents required by this policy and federal law. (20 USC § 6312(e) - Every Student Succeeds Act ["ESSA"].  This omission violates federal law and significantly interferes with parental rights to participate and direct the education of their students and is unacceptable.  This violation of PiSA policy also violated the terms of your administrator contract.

123.    Parents Right-to-Know Notices are required under the Every Student Succeeds Act ("ESSA") for Title I schools.

124.    PiSA Policy No. 4160 does not assign responsibility for Parents Right-to-Know Notices to the Director of Education.

125.    PiSA's job description for the Director of Operations stated that the Director of Operations is responsible for "all compliance responsibilities including Titles I-V […]"

**COMPLAINT AND DEMAND FOR JURY TRIAL - 28**

126.   PiSA's job description for the Director of Education did not assign responsibility for Title I compliance, or the responsibility to send the Parents Right-to-Know Notices.

127.   In the Decision, the hearing officer held that "[t]he notices under ESSA are extremely important and failure to deliver such notices could result in a loss of federal funds, including Title I funds. Thus, Mr. Neddo's failure potentially put at risk PiSA's eligibility to receive federal funds."

128.   The hearing officer failed to identify any PiSA Policy, job description, or other directive that delegated the responsibility for Parents Right-to-Know Notices to Mr. Neddo.

### PiSA Policy No. 4600F2. Volunteer Confidentiality.

129.   The Notice of Due Process Hearing alleged that Mr. Neddo violated the following PiSA Policy:

> **PiSA Policy No. 4600F2. Volunteer Confidentiality.** Policy 4600F2 requires all volunteers to review and sign the Volunteer Code of Confidentiality. Your failure to maintain appropriate Volunteer Records makes it impossible to determine whether School volunteers have been educated of their need to maintain confidentiality; and as a result, you violated both this policy and your contract.

130.   PiSA Policy No. 4600F2 does not assign the responsibility for Volunteer Confidentiality to the Director of Education.

131.   In the Decision, the hearing officer summarily concluded that "The board's volunteer policies included a form requiring volunteers to acknowledge that they have read and understand the Volunteer Code of Confidentiality.  Given the fact that there were no volunteer files, no volunteer training program, there were also no volunteer confidentiality acknowledgment forms signed and placed in files."

**COMPLAINT AND DEMAND FOR JURY TRIAL - 29**

132.     The hearing officer failed to explain why at the November 8, 2018, PiSA Board Meeting, PCSC's assessment identified "Visitors/volunteer processes" as a problem with PiSA's Operations, which was under the purview of PiSA's Director of Operations.

133.     The hearing officer failed to identify any PiSA Policy, job description, or other directive that delegated the responsibility to Mr. Neddo for ensuring that all volunteers review and sign the Volunteer Code of Confidentiality.

### PiSA Policy No. 5340. Evaluation of Certificated Personnel.

134.     The Notice of Due Process Hearing alleged that Mr. Neddo violated the following PiSA Policy:

> **PiSA Policy No. 5340. Evaluation of Certificated Personnel.** One of your most important roles as Education Director is the supervision and evaluation of PiSA's certificated staff. Your responsibilities include the implementation, administration and monitoring of the evaluation of certificated staff, including at least one documented classroom observation in accordance with *the Charlotte Danielson Framework for Teaching Second Edition* domains and components, to be completed no later than January 1 of the school year. You have chosen not to develop and implement this required program, nor have you completed the required observations and evaluations in violation of this policy as well as the requirements of your administrator contract with PiSA.

135.     In the Decision, the hearing officer concluded that Mr. Neddo had violated PiSA Policy No. 5340, because "the DOE was required to create procedures to ensure that each certificated staff member receives at least one (1) written evaluation each year and that at least two (2) documented observations occur, one of which is before January 1."

136.     The hearing officer failed to consider the testimony of PiSA Math Teacher Britne Tingey, PiSA Elementary Teacher Airc Sparksman, PiSA Director of Operations Justin Mann, and Mr. Neddo, who testified that Mr. Neddo had started conducting teacher evaluations by November 25, 2018, and that Mr. Neddo had sent an email to PiSA faculty describing the process by which

**COMPLAINT AND DEMAND FOR JURY TRIAL - 30**

Mr. Neddo would be conducting evaluations.  The email was submitted into evidence at the hearing as Exhibit 122-123.

137.    The hearing officer failed to explain how he concluded that Mr. Neddo's process, as set forth in Mr. Neddo's November 25, 2018 evaluations to PiSA faculty, did not establish that Mr. Neddo had complied with his responsibilities under PiSA Policy 5340.

138.    The hearing officer failed to explain how he concluded that Mr. Neddo should have completed his responsibilities under PiSA Policy No. 5340 prior to the date that PiSA Policy 5340 required evaluations to be completed.

139.    The hearing officer failed to explain how he concluded that Mr. Neddo had violated his Administrator Contract by not completing a documented observation of certificated staff members when Mr. Neddo was placed on administrative leave prior to the first documented observations due under PiSA Policy No. 5340.

<u>**PiSA Policy No. 5710. Paraprofessionals, Teachers' Aides and Paraeducators.**</u>

140.    The Notice of Due Process Hearing alleged that Mr. Neddo violated the following PiSA Policy:

> "**PiSA Policy No. 5710. Paraprofessionals, Teachers' Aides and Paraeducators.** This policy requires you to develop, implement and monitor a training program for PiSA's paraprofessional and aide staffs. The Board has found no evidence that such a program exists, or that any type of evaluations have been performed; and given the complete lack of any paraprofessional/aid personnel files, it is impossible for the Board to determine the level of training/evaluation, if any, provided to these staff members. These failures violate this policy as well as the underlying federal law upon which it is based, and forms another basis for finding you breached you administrator contract.

141.    In the Decision, the hearing officer summarily concluded:

> Policy 5710 expressly states that it is the responsibility of the DOE to provide adequate training for Paraeducators, etc., and that the

DOE shall develop and implement procedures for the evaluation of Teachers' Aides and Paraeducators. Mr. Neddo acknowledged this requirement, and that it was his responsibility, and the testimony of Dr. Hettinger and Board Chair Fleming made it clear that these requirements had not been satisfied. He offered no evidence to the contrary, thereby requiring a finding that he had failed to satisfy the requirements of this Policy and thereby breached his Contract.

142.   The hearing officer failed to explain how he concluded that Mr. Neddo's training of PiSA's Paraeducators on October 23, 2018, immediately upon his return for administrative leave, was not "adequate training for Paraeducators, etc."

143.   The hearing officer failed to explain why any alleged failures of PiSA's special education program constituted a breach of Mr. Neddo's Administrator Contract when PiSA hired a Special Education Director for the purposes of training, overseeing, and managing PiSA's special education program—which includes paraeducators and paraprofessionals.

144.   The hearing officer failed to consider that pursuant to PiSA Policy No. 5710 the evaluations for Paraprofessionals, Teachers' Aides, and Paraeducators were to be completed annually.

145.   The hearing officer failed to consider the testimony of Director of Operations Justin Mann and Mr. Neddo, who testified that Mr. Neddo had conducted evaluations, and had explained the evaluation process in an email dated November 25, 2018, that Mr. Neddo sent to PiSA faculty, including Paraprofessionals, Teachers' Aides, and Paraeducators.

146.   The hearing officer failed to explain how Mr. Neddo's Administrator Contract required Mr. Neddo to complete his responsibilities under PiSA Policy No. 5710 prior to the date that PiSA Policy requires the first evaluations of Paraprofessionals, Teachers' Aides, and Paraeducators to be completed.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 32**

**PiSA Policy No. 1410. Board-Administrative Team Relationship.**

147.    The Notice of Due Process Hearing alleged that Mr. Neddo violated the following

PiSA Policy:

> **PiSA Policy No. 1410. Board Administration Relationship**. You
> violated the requirement of this policy during several instances of
> rude and disrespectful behavior and comments to several Directors
> both during Board meetings (including Executive Session), and in
> private.

148.    The hearing officer concluded that Mr. Neddo caused the deterioration of the

relationship between Mr. Neddo and Defendants, stating:

> The record clearly reflects that Mr. Neddo possessed an attitude of
> disdain and disrespect for the board and the board chair, and actively
> attempted to marginalize both by directing how they could
> communicate with him and limiting the subject matter that could be
> discussed at board meetings. By his comments and actions, Mr.
> Neddo revealed his belief that it was he who ran the school and that
> the board's role was merely a formality which he found annoying
> and inconvenient. (See PISA EX pp. 52, 55. 57. 152, 156. 235. 154-
> 155, and 225.) In addition, in his testimony he admitted that he hated
> the Board Chair, that she made him sick to his stomach, that he
> would not be alone in the same room with her and that he did not
> trust her. The above evidence reveals Mr. Neddo possessed an
> insubordinate attitude that resulted in insubordinate conduct which
> undeniably negatively impacted the functioning of the school and
> the culture negatively affecting all employees, students and parents.
> Mr. Neddo's disdain disrespect and insubordination requires the
> legal conclusion that Neddo violated Board Policy 1410
> Board/Administration Relationship. Policy 5270 Personal
> Conduct/Insubordination. Policy 6000 - Administration and By-
> Law provisions 4.2 - Powers of the Board of Directors, and 6.2 -
> Chairman of the Board, and by this misconduct materially breached
> the essential terms of his employment contract and warrants the
> board's discharge of Neddo.

149.    PiSA Policy 1410 states, in pertinent part, the following: "The Board hires,

evaluates, and seeks the recommendations of the Administrative Team as the Charter School chief

executive officer. The Board adopts policies necessary to provide the general direction for the

**COMPLAINT AND DEMAND FOR JURY TRIAL - 33**

Charter School and to encourage achievement of Charter School goals. The Administrative Team

develop plans, programs, and procedures needed to implement the policies and directs the Charter

School's day-to-day operations."

150.    The Notice of Due Process and the hearing officer's Decision both failed to identify

any specific action by Mr. Neddo that constituted a violation of PiSA policy, PiSA directives,

PiSA's job description for Director of Education, or Mr. Neddo's Administrator Contract.

### PiSA Policy No. 5270. Personal Conduct/Insubordinate Conduct.

151.    The Notice of Due Process Hearing alleged that Mr. Neddo violated the following

PiSA Policy:

> **PiSA Policy No. 5270. Personal Conduct.** As the Education
> Director, you are expected to model the behavior expected of all
> employees of the School. On multiple occasions, however, you have
> chosen to not treat School Staff, Board Directors, and Parents with
> the level of respect required by School policy. In addition, on more
> than one occasion you have refused to comply with Board directives
> and were insubordinate. Examples of insubordinate conduct include:
> (1) Disobeying an appropriate order, instruction or directive of a
> supervising employee or administrator; (2) Refusing to accept a
> reasonable and proper work assignment or directive of a supervising
> employee or administrator; (3) Disputing or ridiculing authority; (4)
> Exceeding authority; and/or (5) Using vulgar or profane language to
> a supervising employee or administrator. The Board has recently
> learned that despite the Board's direction to you to not issue
> Leadership Premium stipends, you nonetheless authorized at least
> two (2) such stipends, and payments were sent to the employees.
> This is but one example of your insubordination toward the Board
> as well as the unauthorized spending of $15,000 in School funds
> without Board approval (see below). This clearly unacceptable
> conduct violated the terms of your administrator contract.

152.    The hearing officer concluded that Mr. Neddo engaged in insubordination, by

stating:

> The testimony of board chair Teresa Fleming and Director Jazmine
> Martin established that Mr. Neddo was insubordinate toward the
> directives of the Board. Indeed, Mr. Neddo acknowledged refusing

**COMPLAINT AND DEMAND FOR JURY TRIAL - 34**

to communicate with the board chair from time to time, and also acknowledged that his relationship with the board chair was so poor that he refused to meet with her alone. Moreover, he repeatedly failed to perform tasks in a complete and timely manner. Similarly, his handling of the Leadership Premium Contracts, and his role in having the contracts signed and payments made prior to formal acknowledgment and approval by the Board, despite clear instructions to the contrary, certainly demonstrate insubordinate conduct in violation of Policy 5270 which warrants a finding that Mr. Neddo had breached his employment contract. In addition, in a number of his correspondence to be discussed in additional detail below, he disputed or ridiculed the authority of the board; basically reflecting his attitude that complying with board oversight was a mere formality and a nuisance which he could choose to ignore.

153.    The Notice of Due Process and the hearing officer's Decisions both failed to identify any specific action by Mr. Neddo that constituted a violation of PiSA policy, PiSA directives, PiSA's job description for Director of Education, or Mr. Neddo's Administrator Contract.

154.    The hearing officer failed to identify the evidence any specific action taken by Mr. Neddo that supported his conclusions that Mr. Neddo "repeatedly failed to perform tasks in a complete and timely manner," that it was possible for Mr. Neddo to "repeatedly fail[ing] to perform tasks in a complete and timely manner."

**PiSA Policy 6010. Reports to the Board.**

155.    The Notice of Due Process Hearing alleged that Mr. Neddo violated the following PiSA Policy:

> **PiSA Policy No. 6010**. **Reports to the Board.** Policy 6010 requires you to provide the Board with timely, thorough and accurate reports describing the status of PiSA's Education Programs. Despite frequent requests for such reports, however, you have repeatedly failed to provide the reports in a timely manner, provided incomplete reports, or provided no reports at all. This failure is unacceptable, and violates this policy as well as your Administrator Contract.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 35**

156.    The hearing officer concluded that Mr. Neddo violated PiSA Policy 6010, by stating:

> Policy 6010 clearly identified several reports that were required for every board meeting, as well as additional information to be provided from time-to-time by the DOE to the Board. Chair Fleming and Director Martin both testified that Mr. Neddo consistently failed to satisfy the requirements of this Policy, which Mr. Neddo acknowledged applied to him and that it was an essential requirement of his position. Mr. Neddo' s failure to keep the Board fully informed of all pertinent information, and his apparent reluctance to do so, violated the requirements of this Policy.

157.    PiSA Policy 6010 states in pertinent part that "The Administrative Team reports to the board as a whole and keeps it informed of the true and accurate position of the outcomes of curriculum; teaching and learning; financial position; and all matters having real or potential legal considerations and risk for our school. Thus, the board is supported in its strategic decision-making and risk management by also requiring the principal Administrative Team to submit any monitoring data required in a timely, accurate and understandable fashion."

158.    PiSA Policy 6010 does not identify the Director of Education as being responsible for any specific report listed in PiSA Policy 6010.

159.    The Notice of Due Process and the hearing officer's Decision both failed to identify any specific action by Mr. Neddo that constituted a violation of PiSA policy, PiSA directives, PiSA's job description for Director of Education, or Mr. Neddo's Administrator Contract.

160.    The hearing officer failed to explain how Mr. Neddo's reports at the PiSA Board meetings, as set forth in the meeting minutes for each meeting, failed to satisfy Mr. Neddo's obligations under PiSA policy, PiSA's job description for Director of Education, Mr. Neddo's Administrator Contract, or pursuant to PiSA directives.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 36**

## V.   CAUSES OF ACTION

### COUNT 1
### DEPRIVATION OF DUE PROCESS RIGHTS
### (ALL DEFENDANTS)

161.   Plaintiff hereby incorporates and re-alleges all previous paragraphs of this Complaint as if fully set forth herein.

162.   Mr. Neddo's position as PiSA's Director of Education was PiSA's equivalent of a Superintendent.

163.   Idaho Code Section 33-513(5) further provides that "[a]ny certificated professional employee, except the superintendent, may be discharged during a contract term following written notice and a due process hearing complying with the specific procedures set forth in the statute."

164.   Plaintiff has a property interest in his three-year Administrator Contract with PiSA.

165.   The Hearing Officer disregarded Idaho Code Section 33-513(5) when determining that alleged material violations of Mr. Neddo's Administrator Contract "require the legal conclusion that the board's discharge of Mr. Neddo is appropriate under the facts and law applicable to this case."

166.   Defendants violated Plaintiff's federal due process rights by terminating Plaintiff's three-year Administrator Contract based on the hearing officer's erroneous application of the law.

167.   Defendants further violated Plaintiff's federal due process rights by failing to pay Plaintiff's salary under the Employment Agreement beyond January 31, 2019.

### COUNT 2
### DEPRIVATION OF DUE PROCESS RIGHTS
### (ALL DEFENDANTS)

168.   Plaintiff hereby incorporates and re-alleges all previous paragraphs of this Complaint as if fully set forth herein.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 37**

169.    Defendants have violated Plaintiff's federal due process rights by terminating Plaintiff's three-year Administrator Contract without providing adequate notice.

170.    Defendants have violated Plaintiff's federal due process rights by terminating Plaintiff's three-year Administrator Contract without providing an explanation of Defendants' evidence.

171.    Defendants have violated Plaintiff's federal due process rights by terminating Plaintiff's three-year Administrator Contract without providing any meaningful opportunity for Plaintiff to present his side of the story for the hearing officer's consideration.

172.    Defendants violated Plaintiff's federal due process rights by terminating Plaintiff's three-year Administrator Contract without providing a hearing in front of an impartial or unbiased decision-maker.

<u>**COUNT 3**</u>
<u>**INJUNCTIVE RELIEF**</u>
**(ALL DEFENDANTS)**

173.    Plaintiff hereby incorporates and re-alleges all previous paragraphs of this Complaint as if fully set forth herein.

174.    Plaintiff has suffered an irreparable injury in that Defendants terminated Plaintiff without providing him the protections of due process.

175.    Plaintiff has suffered an irreparable injury in that Defendants' decision to terminate Plaintiff "for cause" received a substantial amount of media attention, tarnishing Plaintiff's reputation in the community and to future potential employers.

176.    Remedies available at law are inadequate to compensate Plaintiff's injuries.

177.    The public interest would not be disserved by an injunction.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 38**

## VI.   COSTS AND ATTORNEY FEES

Plaintiff's claims arise from violations of 42 U.S.C. § 1983.  As an action to enforce this provision and vindicate a violation of civil rights, Plaintiff is entitled to an award of reasonable costs of suit and attorney fees in an amount deemed reasonable by this Court pursuant to 42 U.S.C. § 1988 in the event he is the prevailing party.

## VII.   DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues properly tried by a jury in the above-entitled matter.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

a.   That the Court declare that Defendants violated Plaintiff's federal due process rights by terminating Plaintiff's three-year Administrator Contract without providing adequate notice;

b.   That the Court declare that Defendants violated Plaintiff's federal due process rights by terminating Plaintiff's three-year Administrator Contract without providing any meaningful opportunity for Plaintiff to present his side of the story for the hearing officer's consideration;

c.   That the Court declare that Defendants violated Plaintiff's federal due process rights by terminating Plaintiff's three-year Administrator Contract without providing a hearing in front of an impartial or unbiased decision-maker;

d.   That the Court declare that Defendants violated Plaintiff's federal due process rights by terminating Plaintiff's three-year Administrator Contract without providing an explanation of Defendants' evidence;

**COMPLAINT AND DEMAND FOR JURY TRIAL - 39**

e.   That the Court declare that Defendants violated Plaintiff's federal due process rights by terminating Plaintiff's Administrator Contract;

f.   That the Court grant injunctive relief mandating that Defendants reinstate Plaintiff to his position as Director of Education;

g.   That the Court grant injunctive relief mandating that Defendants pay Plaintiff's salary and benefits pursuant to the Administrator Contract from February 1, 2019 through June 30, 2021, or at such time that Defendants' determine that Plaintiff's termination is justified after providing Plaintiff with a notice of termination hearing and conducting a termination hearing that complies with Plaintiff's rights to due process;

h.   That the Court grant injunctive relief mandating that Defendants continue to pay Plaintiff's salary until June 30, 2021, or until such time that Defendants' determine that Plaintiff's termination is justified after a notice hearing that complies with Plaintiff's right to due process;

i.   Monetary damages to fairly and reasonably compensate Plaintiff for the deprivation of his rights, including compensatory, consequential, and presumed damages;

j.   That punitive damages be imposed against Defendants in their organizational and individual capacities according to proof;

k.   For costs of suit, including reasonable attorneys' fees, which amount shall be twenty-five thousand dollars ($25,000.00) should this matter be uncontested;

l.   A declaration that defendants violated Plaintiff's constitutional rights;

m.   Any other appropriate injunctive or declaratory relief; and

n.   For such other and further relief as this Court deems just and equitable.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 40**

DATED this 12th day of January 2021.

FISHER HUDSON SHALLAT


_____/s/ Jeremiah M. Hudson_____
Jeremiah M. Hudson –of the firm
*Attorney for Plaintiff*

# EXHIBIT A

# Dan Neddo

2434 West King Road, Kuna, Idaho  83634 | 208-333-0453 | tkcashflow@yahoo.com

**January 2, 2018**

Project Impact STEM Academy
Kuna, Idaho 83634

Dear Hiring Committee:

I am very excited to have the opportunity to submit my name for consideration for the available position in your school, Project Impact STEM Academy.  Given my background in education, business and in having already led successful teams in schools, I feel that I am in a great position to make a positive impact at IDLA.

My real passion in life is to serve others and to help them realize how to be the best that they can be.  As a teacher, I have been able to see my students grow into amazing individuals. As an administrator of the Columbia STEM Academy in the Nampa School District, I have been able to help develop our Academy teachers to become full mentors and coaches while providing a challenging, problem and competency-based education for their students. The school that we are developing at Columbia High School is unique to Southern Idaho and is poised to become something special. I am excited to continue this work by being a part of the building of your new and exciting school, Project Impact STEM Academy.

I am so excited to have the opportunity to apply for this position and look forward to a time that I can meet with you and discuss your vision for the future of education.

**Sincerely,**

**Dan Neddo**


EXHIBIT

B

# Dan Neddo

2434 West King Road, Kuna, Idaho 83634
***Telephone:  208-333-0453 / e-mail:  tkcashflow@yahoo.com***

## ~Academy Administrator~

Highly skilled and overtly student-centered educational leader possessing a strong commitment to the development of students, staff and providing a stimulating, safe and motivating learning environment. Dynamic, visional leader and solid team player with a proven track record in collaborating with the school, and community while developing a strong personalized/competency based learning structure for students.  Trustworthy professional with excellent communication skills to develop lasting relationships between staff, students and the community.

## EDUCATION

| | |
|---|---|
| 2015 | Northwest Nazarene University, Nampa, Idaho |
| | **Masters Educational Leadership: Building Administration** |
| 2004 | Boise State University, Boise, Idaho |
| | **BBA in Business Management** |
| | **BBA in Human Resource Management** |

## CERTIFICATIONS

| | |
|---|---|
| 2018 | Idaho Education Credential |
| | **Standard Administrator School Principal Pre-K-12** |
| 2018 | Idaho Education Credential |
| | **Standard Secondary Natural Science 6-12** |
| 2010 | American Board for Certification of Teacher Excellence |
| | **General Science** |

## PROFESSIONAL EXPERIENCE

| | |
|---|---|
| March 2014-Current | Columbia High School, Nampa Idaho |
| | **Columbia STEM Academy Administrator** |

- Develop and oversee STEM program as a school within a school while directing curriculum, instructional strategies and lesson planning for competency based activities creating an environment conducive to learning.
- Oversee five STEM Teachers and 141 STEM students coordinating Project Based Learning (PBL) lessons and projects.
- Promote professional development experiences for faculty to further STEM Academy's vision of education.
- Develop partnerships with industry, community and higher education leaders to bring real-world problems for the STEM students to work on.
- Direct daily STEM Academy operations including staff member coverage, student scheduling and community involvement.

| August 2010-Current | Columbia High School, Nampa, Idaho |
| --- | --- |
| | **Teacher, Physics, STEM, Physical Science and Pre-Engineering** |

- Teach chemistry, physics and Pre-Engineering courses
- Developed Conceptual Physics program not previously offered at school
- Science Department Team Leader
- Interdisciplinary and Response to Intervention Team Leader

| August 2013-2015 | Columbia High School, Nampa, Idaho |
| --- | --- |
| | **Dean of Students, Ninth Grade** |

- Oversee attendance and discipline of students
- Advocate for students appealing for credit recovery from School Board
- Administrator representative for Special Education meetings
- Developed and administered school benchmark assessments

## ASSOCIATION MEMBERSHIP

- Idaho Science Teacher Association-Future President
- Association of Inertia Masters-10th Level

## Other Professional Experiences

Chaperoned students in the German American Partnership Program (GAPP) to Altotting, Germany-2014

Reviewed items and analyzed data for Idaho Science ISAT exams.

Developed criteria limits and reviewed items for Idaho State Chemistry End of Course Exams

Presented training at Idaho Science Teacher Association Conferences 2012-2016

## Awards

- Columbia High School Department of the Year
- Columbia High School Teacher of the Month
- 2011 American Board Idaho Teacher of the Year

## References

Cory Woolstenhulme, Columbia High School Principal

Email: cwoolstenhulme@nsd131.org

Phone: 208-573-3889

Angela Hemingway, Executive Director of Idaho STEM Action Center of Idaho

Email: Angela.Hemingway@stem.idaho.gov

Phone: 208-332-1726

Eric Kellerer, Director, NNU Doceo Center

Email: ejkellerer@nnu.edu

Phone: 208-467-8350



# Dan Neddo

### ~Academy Administrator~

I am a highly skilled and overtly student-centered educational leader possessing a strong  commitment to the development of students, and staff while providing a stimulating, safe and motivating learning environment. Dynamic, visional leader and solid collaborative player with a proven track record in working within the academic, and community while developing a strong personalized/competency based learning structure for students.

### Curriculum Vitae

tkcashflow@yahoo.com
1.208.333.0453
2434 West King Road
Kuna, ID  83634
USA

## General Information


1971


15 Years


5 Children


11 Countries


4 Years

## History



## Personal Skills



## Languages



## Oh, The Places I've Been



# EXHIBIT B

SDE Reviewed 4/25/2017

## STATE OF IDAHO
# PROJECT IMPACT STEM ACADEMY ADMINISTRATOR CONTRACT

THIS CONTRACT, made this 1st day of July year of 2018, by and between Project Impact STEM Academy Charter School, Kuna, Idaho ("the School"), and Daniel Neddo ("the Administrator").

WITNESSETH:

1. That the School hereby employs said Administrator to perform the duties of the Director of Education so designated by the School and to perform such other duties as specified by the School at any time during the term hereof, provided that the Administrator is properly certified and endorsed to perform said duties for a period of 3 years (36 months), beginning in the month and day of July 1, year of 2018, through the month and day of June 30, year of 2021, at a base salary of Seventy-five thousand dollars ($75,000.00) per year, plus any additional annual increments, and such other monetary benefits accorded by the School to employees under contract for this position which may be described in a separate addendum. Said salary shall be paid in equal monthly installments in the amount of $6, 250.00 (six thousand, two-hundred and fifty), minus any applicable deductions, on the first day of each month beginning in August, year of 2018, to August, year of 2021, inclusive.

2. In consideration of the promises and agreement of the School herinbefore recited, the Administrator agrees to assume the duties above recited at 2275 W. Hubbard Road, Kuna, Idaho on July 1, in the year 2018, and to faithfully perform and discharge the same to the best of his/her ability and as directed by the School and to comply with the applicable laws of the State of Idaho and duly adopted rules of the State Board of Education, and such regulations, directives and policies as the Board of Directors may legally prescribe which are, by reference, incorporated in and made a part of this agreement the same as if set forth herein.

3. The School shall review this Contract during the second year of performance hereunder to consider employing the Administrator beyond the last year designated in this contract. If the School elects to employ the Administrator beyond the last year designated in this Contract, it shall offer the Administrator a new Contract that reflects the new terms of employment, unless one of the parties notifies the other party by the sooner of the date this Contract expires or the July 1st following the last school year of employment under this Contract, of the intent to discontinue employment.

4. It is hereby mutually stipulated and agreed by and between the parties hereto that nothing herein contained shall operate or be construed as a waiver of any of the rights, powers, privileges, or duties of either party hereto, by and under the laws of the State of Idaho, otherwise than is herein expressly stated, and that no property rights attach to this Contract beyond the term of this Contract.

5. The terms of this Contract shall be subject to amendment and adjustment to conform to the terms of any negotiated agreement between the parties as long as those terms do not conflict with the terms of this Contract.

IN WITNESS WHEREOF the School has caused this Contract to be executed in its name by its proper officials and the Administrator has executed the same all on the date first above written.

PROJECT IMPACT STEM ACADEMY CHARTER SCHOOL ADA COUNTY, STATE OF IDAHO

_____        By _____, CHAIRMAN
          ADMINISTRATOR                              BOARD OF DIRECTORS

                                        Attest: _____
                                                          CLERK

This contract form is reviewed by the State Superintendent of Public Instruction.